UNITED STATES of AMERICA
U.S. DISTRICT COURT -- EASTERN DISTRICT OF MICHIGAN

ANTHONY PAGLIA,

    Plaintiff,                                 DEMAND FOR JURY TRIAL

-vs-                                       Case No.
                                                Hon.

BRUCE MILNES INC,
JPMORGAN CHASE BANK, N.A.,
WS AFTERMARKET SERVICES CORPORATION,

    Defendants.

## COMPLAINT AND JURY DEMAND

### JURISDICTION

1. This court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337.

2. As to any supplemental claims set forth herein, there are no exceptional circumstances or other compelling reasons for this Court to decline jurisdiction and the interests of justice would best be served if this Court heard these claims along with the federal claims.

### PARTIES

3. The Plaintiff to this lawsuit is Anthony Paglia who resides in Warren, Michigan in Macomb County.

4. The Defendants to this lawsuit are as follows:

   a. Bruce Milnes Inc. ("BMI") which is a corporation doing business in Michigan and which by statute and condition of licensing, may be served through its irrevocable resident agent, the Bureau of Regulatory Services, Business Licensing and Regulation Division, Richard H. Austin Building – 3rd Floor, 430 W. Allegan Street, Lansing, MI 48918.

   b. JP Morgan Chase Bank, NA ("JPMCBNA"), which is an association or corporation doing business in Michigan, and which may be served at any branch office.

   c. WS Aftermarket Services Corporation ("WSASC") which is a corporation doing business at 7125 W Jefferson Avenue Ste 200, Lakewood, CO 80235, and whose resident agent CSC-Lawyers Incorporating Service (Company) maintains its office at 601 Abbott Road, East Lansing, MI 48823.

5. At all relevant times BMI – in the ordinary course of its business -- regularly extended or offered consumer credit for which a finance charge is, or may be imposed or which, by written agreement is payable in more than four installments and is the person to whom the transaction which is the subject of this action is initially payable.

6. BMI is a creditor under TILA, 15 U.S.C. § 1602(g) and regulation Z § 226.2(a)(17).

## **VENUE**

7. The transactions and occurrences which give rise to this action occurred in Macomb County.

8. Venue is proper in the Eastern District of Michigan.

**GENERAL ALLEGATIONS**

9. On or about August 4, 2014, Plaintiff executed a purchase and finance agreement known as a retail installment contract with BMI for a 2004 Ford F250 Super Cab, VIN 1FTNW21L54EB86362 ("the vehicle").

10. The retail installment contract is currently held by JPMCBNA.

11. Under M.C.L. § 492.114a and according to the express terms of the installment contract now held by JPMCBNA, JPMCBNA is subject to all claims and defenses that arise against BMI for the sale of the vehicle, and is jointly liable to the extent of any payments received from Mr. Paglia.

12. BMI failed to clearly and conspicuously disclose the annual percentage rate in the manner prescribed by Regulation Z of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*

13. BMI failed to clearly and conspicuously disclose the finance charge in the manner prescribed by Regulation Z of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*

14. BMI failed to clearly and conspicuously disclose the amount financed in the manner prescribed by Regulation Z of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*

15. BMI failed to clearly and conspicuously disclose the Total of Payments in the manner prescribed by Regulation Z of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*

16. Mr. Paglia purchased an extended service contract or warranty at the time he purchased the vehicle.

17. WSASC administers the extended service contract.

18. BMI and WSASC charged Mr. Paglia $2,533.00 for the warranty.

19. BMI and WSASC represented to Mr. Paglia at the time they charged him $2,533.00 for the warranty that the vehicle was eligible for the warranty; this was a material misrepresentation.

20. Mr. Paglia would not have purchased the vehicle if he had known that it was not eligible for a warranty with WSASC.

21. Before executing the retail installment contract, BMI made the following material representations ("material representations") which also constituted express warranties, were false, and related to the vehicle:

    a. That the vehicle came with a valid warranty or service contract.

22. BMI made the following representations by operation of law as a result of the sale of a written warranty or extended service contract within 90 days of the sale of the vehicle:

    a. The vehicle was merchantable.

    b. the vehicle was fit for its intended purpose.

23. Before executing the purchase agreement, BMI made the following specific representations which constituted express warranties:

    a. That the vehicle came with a valid warranty or service contract.

24. The vehicle did not meet BMI's specific representations which constituted express warranties.

25. BMI disclaimed or limited the warranty of merchantability and fitness for use without doing so clearly and conspicuously.

26. The vehicle constitutes a "good" under article 2 of the UCC, M.C.L. §440.2101 *et seq*.

27. Since the date of purchase the vehicle has suffered from the following mechanical defects:

    a. a shattered pinion bearing and damaged case; and

    b. a defective rear differential.

28. Each time Mr. Paglia learned of a mechanical defect, he promptly notified BMI of that defect.

29. Five weeks after the Plaintiff took delivery, the vehicle broke down and required $2,795.23 in repairs.

30. WSASC refused to pay for the repairs which otherwise would have been covered under its service contract.

31. In spite of a written request, BMI failed to reimburse Mr. Paglia for the repairs needed to the vehicle.

32. Based on the frequency of breakdown, the vehicle's time out of service, the severity of the mechanical failures, the cost of warranty coverage, and amount of other expenses incurred during the limited time of ownership of the vehicle, the vehicle has been rendered unmerchantable, unfit, and of diminished value to Mr. Paglia

33. WSASC has failed or refused to properly repair the vehicle.

34. The value of the vehicle as delivered to Mr. Paglia was less than the value as warranted.

35. Mr. Paglia properly rescinded, canceled, or otherwise terminated the contract of sale, thereby requiring BMI to return of all payments for the vehicle, cancel the security interest in the vehicle, and return the motor vehicle retail instalment sales contract.

## COUNT I -- Truth In Lending Act (BMI)

36. Mr. Paglia incorporates the preceding allegations by reference.

37. By failing to provide Mr. Paglia with a copy of truth in lending disclosures at the time and in the manner prescribed by Regulation Z of the Truth in Lending Act, the dealer has violated the federal Truth in Lending Act, 15 U.S.C. § 1601.

38. BMI was required to make the disclosures required by 16 U.S.C. § 1638 prior to failed to prior to consummating the sale of the vehicle.

39. Those disclosures were required to be made in writing, in form that could be kept by the consumer so that consumers may shop for credit prior to engaging in a credit transaction.

40. BMI failed to make those disclosures in a timely fashion in violation of 15 U.S.C. § 1638(a)(4).

41. BMI is liable to plaintiff for actual and statutory damages to be determined at trial, costs, and statutory attorney fees in accordance with 15 U.S.C. § 1640.

## COUNT II -- Magnuson-Moss Warranty Act

### (BMI &JPMCBNA)

42. Mr. Paglia incorporates the preceding allegations by reference.

43. Paglia is a consumer as defined in 15 U.S.C. §2301(3).

44. BMI is a supplier and warrantor as defined in 15 U.S.C. §230 1(4)(5).

45. At the time BMI sold the vehicle to Mr. Paglia , BMI also sold a service contract to Mr. Paglia .

46. The predominant purpose of the transaction in which BMI sold the vehicle and service contract to Mr. Paglia was one for sale of goods, namely a car.

47. BMI was a party to the contract in which the vehicle and the service contract were sold to Mr. Paglia .

48. The provision of a service contract by BMI served as a basis for Mr. Paglia's confidence in the vehicle and its reliability.

49. The provision of a service contract by BMI served as a basis for the bargain between Mr. Paglia and BMI in the transaction in which the vehicle was purchased.

50. BMI has attempted to disclaim the implied warranties of fitness and merchantability where it has sold a service contract within 90 days of the sale of the vehicle.

51. BMI's attempts to disclaim the implied warranties of fitness and merchantability where it has sold a service contract within 90 days of the sale of the vehicle violates 15 U.S.C. §2308.

52. As a seller of motor vehicles, BMI was obligated to comply with the FTC buyers guide rule promulgated under the Magnuson Moss Warranty Act, 15 C.F.R. 455.1 *et seq*

53. Under the buyers guide rule, BMI was required to affix the buyers guide to the car prior to the sale of the vehicle to Mr. Paglia's .

54. BMI failed to affix the buyers guide to the car prior to the sale of the vehicle to Mr. Paglia's , thereby violating the buyers guide rule.

55. In the FTC buyers guide, BMI affirmatively stated that it was giving no warranties.

56. Under the buyers guide rule, 16 C.F.R. §455.4, BMI may not make any oral representations contrary to the final terms incorporated into the buyer's guide.

57. The oral representations made by BMI are contrary to the terms stated in the buyers guide, and therefore violate 16 C.F.R. §455.4 and constitute an unfair or deceptive practice under 15 U.S.C. 2301 *et seq*.

58. Under 15 U.S.C. §2301(a)(1), BMI, must remedy any defect, malfunction or nonconformance of the subject vehicle as a warrantor of the vehicle.

59. BMI has violated 15 U.S.C. §2304(d) by failing to provide the required remedy for the failure to honor a written warranty.

60. Mr. Paglia has suffered damages as a result of these breaches of warranty and failure to provide a remedy under 15 U.S.C. §2304(d).

61. Mr. Paglia suffers continuing damages as a result of these breaches of warranty and failure to provide a remedy under 15 U.S.C. §2304(d).

### COUNT III -- Violation of Michigan Consumer Protection Act

### (BMI &JPMCBNA)

62. Mr. Paglia incorporates the preceding allegations by reference.

63. BMI is engaged in trade or commerce as that term is defined in M.C.L. § 445.902.

64. BMI has engaged in one or more of deceptive or unfair practices prohibited by the Michigan Consumer Protection Act, M.C.L.§ 445.903, including but not limited to the following:

    a. Causing a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services.

    b. Using deceptive representations or deceptive designations of geographic origin in connection with goods or services.

    c. Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has sponsorship, approval, status, affiliation, or connection that he or she does not have.

    d. Representing that goods are new if they are deteriorated, altered, reconditioned, used, or secondhand.

    e. Representing that goods or services are of a particular standard, quality, or grade, or

      that goods are of a particular style or model, if they are of another.

f.     Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions.

g.     Representing that a part, replacement, or repair service is needed when it is not.

h.     Representing to a party to whom goods or services are supplied that the goods or services are being supplied in response to a request made by or on behalf of the party, when they are not.

i.     Causing a probability of confusion or of misunderstanding with respect to the authority of a salesperson, representative, or agent to negotiate the final terms of a transaction.

j.     Causing a probability of confusion or of misunderstanding as to the legal rights, obligations, or remedies of a party to a transaction.

k.     Causing a probability of confusion or of misunderstanding as to the terms or conditions of credit if credit is extended in a transaction.

l.     Disclaiming or limiting the implied warranty of merchantability and fitness for use, unless a disclaimer is clearly and conspicuously disclosed.

m.     Representing that a consumer will receive goods or services "free", "without charge", or words of similar import without clearly and conspicuously disclosing with equal prominence in immediate conjunction with the use of those words the conditions, terms, or prerequisites to the use or retention of the goods or services advertised.

n.     Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer.

o. Entering into a consumer transaction in which the consumer waives or purports to waive a right, benefit, or immunity provided by law, unless the waiver is clearly stated and the consumer has specifically consented to it.

p. Failing, in a consumer transaction that is rescinded, canceled, or otherwise terminated in accordance with the terms of an agreement, advertisement, representation, or provision of law, to promptly restore to the person or persons entitled to it a deposit, down payment, or other payment, or in the case of property traded in but not available, the greater of the agreed value or the fair market value of the property, or to cancel within a specified time or an otherwise reasonable time an acquired security interest.

q. Taking or arranging for the consumer to sign an acknowledgment, certificate, or other writing affirming acceptance, delivery, compliance with a requirement of law, or other performance, if the merchant knows or has reason to know that the statement is not true.

r. Gross discrepancies between the oral representations of the seller and the written agreement covering the same transaction or failure of the other party to the transaction to provide the promised benefits.

s. Charging the consumer a price that is grossly in excess of the price at which similar property or services are sold.

t. Causing coercion and duress as the result of the time and nature of a sales presentation.

u. Making a representation of fact or statement of fact material to the transaction such

       that a person reasonably believes the represented or suggested state of affairs to be other than it actually is.

65. Mr. Paglia has suffered damages as a result of these violations of the Michigan Consumer Protection Act.

66. Mr. Paglia suffers continuing damages as a result of these violations of the Michigan Consumer Protection Act.

### **COUNT IV -- Misrepresentation (BMI, WSASC & JPMCBNA)**

67. Mr. Paglia incorporates the preceding allegations by reference.

68. The material representations were intended to induce the reliance of Mr. Paglia.

69. The material representations did induce the reasonable reliance of Mr. Paglia.

70. BMI made the material representations with actual knowledge of their falsity.

71. BMI made the material representations with reckless disregard to their truth or falsity.

72. BMI made the material representations even though it should have known that they were false.

73. These actions constitute a misrepresentation upon Mr. Paglia by BMI.

74. Mr. Paglia has suffered damages as a result of this misrepresentation.

75. As a result of this misrepresentation, Mr. Paglia suffers continuing damages.

### **COUNT V -- Breach of Contract (BMI, WSASC & JPMCBNA)**

76. Mr. Paglia incorporates the preceding allegations by reference.

77. BMI's tender of the performance did not conform as a result of the vehicle's mechanical defects, lack of merchantability, or fitness for intended purpose which existed at the time of delivery.

78. The failure of BMI to deliver conforming goods, title, and follow up services at the contract price constitutes a material breach of contract.

79. WSASC's failure or refusal to properly repair the vehicle constitutes a breach of contract.

80. Mr. Paglia has suffered damages as a result of this breach of contract.

81. Mr. Paglia suffers continuing damages as a result of this breach of contract.

### COUNT VI -- Breach of Warranties (BMI &JPMCBNA)

82. Mr. Paglia incorporates the preceding allegations by reference.

83. BMI has breached its warranty of merchantability.

84. BMI has breached its warranty of fitness for intended purpose.

85. Mr. Paglia has suffered damages as a result of these breaches of warranty.

86. Mr. Paglia suffers continuing damages as a result of these breaches of warranty.

### COUNT VII -- Repudiation (BMI &JPMCBNA)

87. Mr. Paglia incorporates the preceding allegations by reference.

88. There remain executory obligations relating to the purchase of the vehicle.

89. Mr. Paglia demanded assurances of BMI's performance in the demand letter sent to BMI.

90. BMI failed or refused to provide assurances of its performance consistent with its obligations.

91. BMI's failure to provide assurances of its performance constituted a repudiation of its contract with Mr. Paglia.

92. Mr. Paglia has suffered damages as a result of this repudiation.

93. Mr. Paglia suffers continuing damages as a result of this repudiation.


### **COUNT VIII -- UCC Revocation Of Acceptance (BMI &JPMCBNA)**

94. Mr. Paglia incorporates the preceding allegations by reference.

95. The nonconformity of the vehicle could not have been reasonably discovered by Mr. Paglia at the time BMI tendered delivery.

96. Mr. Paglia would not have accepted the vehicle had Paglia known that the vehicle was nonconforming.

97. BMI has not made its tender of delivery conforming.

98. Mr. Paglia sent notice of revocation within a commercially reasonable time.

99. Mr. Paglia has suffered damages as a result of this failure to provide a conforming tender or return of purchase price after revocation of acceptance.

100. Mr. Paglia suffers continuing damages as a result of this failure to provide a conforming tender or return of purchase price after revocation of acceptance.

### **COUNT IX — Motor Vehicle Sales Finance Act (BMI &JPMCBNA)**

101. Mr. Paglia incorporates the preceding allegations by reference.

102. This claim is brought under the Michigan Motor Vehicle Sales Finance Act, M.C.L. §492.101 *et seq*, which will be referred to as the MVSFA throughout the remained of this complaint.

103. BMI failed to properly complete all necessary terms of the installment contract as required by M.C.L. §492.101 et seq.

104. Mr. Paglia have suffered the damages set forth above by reason of the BMI's violations of the MVSFA.

**COUNT X — Motor Vehicle Installment Sales Contract Act (BMI &JPMCBNA)**

105. Mr. Paglia incorporates the preceding allegations by reference.

106. This claim is brought under the Michigan Motor Installment Sales Contract Act, M.C.L. § 566.301 *et seq*, which will be referred to as the MVISCA throughout the remainder of this complaint.

107. Mr. Paglia suffered damages in the amount of the finance charge imposed.

**JURY DEMAND**

108. Anthony Paglia demands a jury trial in this case.

**REQUEST FOR RELIEF**

Plaintiff requests that this Honorable Court assume jurisdiction over this case including all supplemental claims, award actual damages, and award statutory damages along with costs and attorney fees.

        Respectfully Submitted,

        ADAM G. TAUB & ASSOCIATES
        CONSUMER LAW GROUP, PLC

        By:    s/ Adam G. Taub
                  Adam G. Taub (P48703)
                  Attorney for Anthony Paglia
                  17200 West 10 Mile Rd. Suite 200
                  Southfield, MI 48075
                  Phone: (248) 746-3790
                  Email: adamgtaub@clgplc.net

Dated: March 11, 2015